UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRANDEN E. OVERSTREET, | ) | CASE NO. 1:05-CV-0921 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE ANN ALDRICH |
| | ) | |
| MACK INDUSTRIES, INC., et al., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | MEMORANDUM AND ORDER |

Plaintiff Branden E. Overstreet ("Overstreet") filed a complaint with this court on April 7, 2005, against Mack Industries, Inc., ("Mack"), Concrete Vault and Sewage Systems Installers Union, Local 20 ("Local 20"), Steve Kemp ("Kemp"), Tim Weidrick ("Weidrick"), Bob Hawkins ("Hawkins"), Tim Davis ("Davis"), and Jon Doe ("Doe"), (collectively "defendants"), raising seven claims: (1) a hybrid § 301 claim under the Labor Relations Management Act ("LMRA") for breach of the collective bargaining agreement ("CBA") and breach of the duty of fair representation (Doc. No. 1-1, at ¶¶ 48-86); (2) defamation (*Id*., at ¶¶ 87-93); (3) negligence (*Id*., at ¶¶ 94-100); (4) fraudulent inducement (*Id*., at ¶¶ 101-112); (5) discrimination based on a perceived disability (*Id*., at ¶¶ 115-123); (6) intentional interference with Overstreet's employment relationship (*Id*., at ¶¶ 124-130); and (7) reverse age discrimination (*Id*., at ¶¶ 124-130). On June 30, 2006, Mack, Kemp, and Weidrick (collectively, "Mack et al."), as well as Local 20, Hawkins, and Davis (collectively Local 20 et al.), each filed separate motions for summary judgment. (Doc. Nos. 18-1, 19-1). On August 3, 2006, Overstreet filed a brief in opposition. (Doc. No. 24-1). On August 11 and 16, 2006, Mack et al. and then Local 20 et al. filed their reply briefs. (Doc. Nos. 27-1, 28-1).

All issues have been fully briefed and are ripe for adjudication. For the following reasons,

the court grants Mack et al.'s and Local 20 et al.'s motions for summary judgment (Doc. Nos. 18-1, 19-1) in full.

### I. Factual Background

Mack manufactures precast concrete goods for a variety of applications throughout the Midwest and East Coast of the United States. (Doc. No. 19-1, at 3). On October 2, 2003, Overstreet was hired by Mack as an installation laborer. (Doc. No. 19-2, at ¶2). He became a member of Local 20 after completing his probationary period in approximately 45 days. (Doc. No. 18-4, at 6). Overstreet is a young man in his twenties (Doc. No. 28-1, at 10), who prior to his termination, had a reputation as being a good employee. (Doc. No. 18-4, at 47, 53).

In September of 2004, Overstreet was assigned to work at Mack's Michigan plant, and during this time, Overstreet drove a company car to and from the Michigan work site. (Doc. No. 1-1, at ¶28). Upon return, it was procedure to drop the vehicle off at the Valley City, Ohio plant and pick it up the following Monday if Overstreet was required to report back to Michigan. (Doc. No. 27-2, at 76, 79). In the event that a vehicle was returned during non-business hours, the employee was instructed to leave the keys behind the gas cap. (*Id.,* at 79, 1-20).

On September 24, 2004, Overstreet dropped the vehicle off at the Valley City location upon his return from the out of state work site. (Doc. No. 18-3, at 80). Overstreet was later informed that same evening to report back to the Michigan site on the following Monday. Overstreet was told by a supervisor to be there early. *Id.*

Instead of picking the car up the morning of September 27, 2004, Overstreet decided on his own initiative to pick the car up on Sunday evening, September 26, 2004. (Doc. No. 18-3 at 82-83). Overstreet admits that he picked up the vehicle early, without permission. (Doc. No. 27-2, at 82).

Overstreet then drove the car to his parents house where he resided. Overstreet alleges that he picked the car up Sunday evening in order to get an early start. (Doc. No. 18-3, at 82). He planned on packing the car Sunday evening, and spending the night at Jason M. Shriver's ("Shriver") home, the fellow co-worker who was to accompany him to work at the Michigan plant Monday morning. (Docket No. 1-1, at ¶ 32-33).

At or around 8:00 p.m., while backing the car out of his parents driveway on his way to Shriver's home, Overstreet lost control of the vehicle and struck a telephone pole rendering the vehicle inoperable. Overstreet alleges that he lost control when a tire went flat, forcing him off the driveway. Shortly thereafter, he notified his supervisor Kemp that he was involved in an accident with a company car, and that the car was inoperable. After failing to secure an alternate ride for both Overstreet and Shriver, Kemp instructed Overstreet to report to the Valley City plant at 7:00 a.m. the next morning.

The next morning Overstreet clocked in around 7:00 a.m. and reported to Kemp's office. Overstreet was instructed to go to Medina General Hospital to have a post accident alcohol and drug evaluation in accordance with company policy. (Doc. No. 18-3, at 117, 118). After taking the tests, Overstreet returned to Kemp's office where he filled out a post-accident report. In his report he stated, "I, Branden Overstreet, was backing out of the driveway of 18449 Chamberlain Rd. Grafton/Ohio [parents' home], lost control of the vehicle due to tire failure [and] spun in the grass off the driveway [and] struck a telephone pole." (Doc. No. 19-2, at 6). Overstreet estimated that he was traveling at 10 m.p.h. when he lost control of the vehicle. (*Id*. at 7). After filling out the report, Overstreet was instructed to find a supervisor in the plant to find work for him.

On or about 12:00 p.m., Overstreet met with Kemp, safety director Weidrick, and Jim

Clement ("Clement"), the fleet manager and head of the mechanic division. Weidrick and Clement had just conducted an onsite accident investigation for Mack. Kemp explained to Overstreet that based on the accident investigation, the damage to the vehicle was in excess of what the car was worth, and that he could either contact his car insurance to cover the damage or purchase the car for the book price of $1,200.00 dollars. (Doc. No. 1-1 at ¶78). Overstreet requested time to consider and discuss the matter with his father because he was covered under his father's insurance policy. After consultation with his father, he elected to purchase the vehicle.

Kemp later made the decision to terminate Overstreet based on the findings of Mack's investigation, which contradicted that of Overstreet's version of events. In sum, it was the opinion of the safety director that it "was not possible" that Overstreet was only traveling at 10 m.p.h. "because the skid marks were over 100 feet long." (Doc. No.19-2, at 9). The investigation found that "the car was driven in reverse at a high rate of speed." (*Id*. at 8)  The report also indicated a "heavy odor of alcohol," and noted that the floor was wet and smelled "clearly of alcohol." *Id*. Based on these findings, it was Kemp's honest belief that Overstreet deliberately damaged the company property and that he willfully falsified his Driver Accident Report. (*Id*. at 1, ¶ 9). Consequently, Kemp decided to terminate Overstreet.

At approximately 1:00-1:15 p.m. Local 20 representatives Hawkins and Davis arrived at Kemp's office upon his request. During the meeting, Kemp informed Hawkins and Davis of what had happened to the company vehicle, and that he was going to terminate Overstreet. In response, Davis advocated for alternatives to termination such as suspension days and transfers based on Overstreet's reputation as being a good employee. (Doc. No. 18-4 at 46-47). These attempts, however, were unavailing. After a brief meeting with the union representatives, Overstreet was

brought into the meeting where Kemp introduced Davis and Hawkins as representatives of Local 20. Subsequently, Kemp terminated Overstreet in the presence of Weidrick, Hawkins, Davis, and Clement for violation of Plant Rules, Group A, (1) Deliberate Damage to Company Property and, (2) Willful Falsification of Reports. At some time during the meeting, Overstreet was asked to sign his discipline report acknowledging the grounds for his termination; he refused. Hawkins and Davis then signed the report as witnesses to Overstreet's refusal to sign.

There is a factual dispute as to whether Hawkins and/or Davis informed Overstreet that he could file a grievance to dispute the grounds for termination. Overstreet alleges that "he was never informed by Hawkins and/or Davis that he could file a grievance and/or appeal the decision to terminate." (Doc. No. 18-3 at 153). To the contrary, Davis and Hawkins both maintain that Overstreet was informed that he could file a grievance within three days. (Doc. No. 18-4 at 18). In any event, this factual dispute is immaterial as it has no impact on the outcome of this pending motion.

Several weeks after his termination, Overstreet contacted Doug Smith ("Smith"), a union representative, and discussed his termination. Smith looked into the event, and later informed Overstreet that nothing could be done. Smith explained that the time period to file a grievance had passed. (Doc. No. 18-3 at 153).

All defendants maintain that the two reasons articulated in the discipline report are the only reasons for the termination of Overstreet, and that the grounds for his discharge constitute just cause. Overstreet, however, alleges that Mack terminated him on account of "being regarded as having a drinking disability." (Doc. No. 1-1 ¶114). Overstreet points out that Smith told Overstreet that a factor in his termination had to do with the smell of alcohol in his car as indicated in the

-5-

investigation report. (Doc. No. 1-1 at ¶118). Furthermore, Overstreet alleges that his youth led to management having a stereotypical perception of him as someone having an alcohol problem. (Doc. No. 1-1 ¶134). Thus, Overstreet alleges that he was terminated on account of a perceived disability, and on the basis of reverse age discrimination in violation of O.R.C. 4112.02 (A).

Accordingly, Overstreet raises the aforementioned claims, and seeks compensatory and punitive damages, and attorneys' fees and costs. In response, Mack et al. and Local 20 et al. filed separate motions for summary judgment on the grounds that there are no genuine issues of material fact, and that they are entitled to judgment as a matter of law.

## II. Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The party moving for summary judgment has the initial burden to either (1) present affirmative evidence negating an element of the non-movant's claim, or (2) demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once that burden is met, the non-movant must set forth sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). To avoid summary judgment, the non-movant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

All reasonable factual inferences must be drawn in favor of the non-movant. *Humenny v. Genex Corp.*, 390 F.3d 901, 904 (6th Cir. 2004) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). However, "the mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Indeed, "[a] mere scintilla of evidence is insufficient; rather there must be evidence on which the jury could reasonably find for the non-movant." *Humenny*, 390 F.3d at 904 (internal quotation omitted).

### III.  Legal Analysis

**A.  § 301 Hybrid Claim**

Mack, et al. asserts that Overstreet's hybrid § 301 claim for breach of the CBA and breach of the duty of fair representation is barred on account of a six-month statute of limitations applicable to all hybrid § 301 claims. This court agrees.

A "hybrid" action under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185, is one in which a union member sues his or her employer for breach of its contractual obligations under a collective bargaining agreement, and sues the union for breach of its duty of fair representation. The six-month statute of limitations period under § 10(b) of the National Labor Relations Act, 29 U.S.C.A. § 160(b), for filing unfair labor practice charges, applies to an employee's hybrid action against an employer and the union. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151 (1983); see also, *Martin v. Lake County Sewer Co., Inc*, 269 F.3d 673 (6th Cir. 2001). Further, in an employee's hybrid action, the six-month period generally begins to run "when an employee discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the

alleged violations." *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 803 (6th Cir. 1990).

In his reply memorandum, Overstreet does not refute that he is time barred on account of the statute of limitations; and indeed, he is. Overstreet was terminated on September 27, 2004. To reiterate, the six-month period generally begins to run "when an employee discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violations." *Id.* In the instant case, all the acts by the defendants giving rise to this claim occurred on September 27, 2004, the day of Overstreet's termination. As such, his cause of action accrued on the date of his termination, which would require Overstreet to file his complaint no later than March 27, 2005. His complaint, however, was not filed until April 7, 2005. Accordingly, Overstreet's hybrid § 301 claim is time barred. Therefore, all defendants are entitled to judgment as a matter of law with respect to the first cause of action in Overstreet's complaint.

**B.     All Remaining State Law Claims**

All remaining state law claims are dismissed in light of the dismissal of the federal hybrid § 301 claim. Overstreet's remaining state law claims include defamation, negligence, fraudulent inducement, tortious interference with employment relationship, and discrimination in violation of O.R.C. 4112.02(A). In light of the dismissal of Overstreet's only federal law claim, the court will decline to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 28 1367(c)(3) (2005); *Musson Theatrical, Inv. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state laws claims. . . ."). Accordingly, causes of action two through seven are dismissed without prejudice.

### IV.    Conclusion

For the foregoing reasons, Mack et al.'s and Local 20 et al.'s motions for summary judgment on Overstreet's hybrid § 301 claims are each granted. The state law claims, causes of action two through seven, are dismissed, without prejudice.

This order is final and appealable.

IT IS SO ORDERED.

    /s/ Ann Aldrich
ANN ALDRICH
UNITED STATES DISTRICT JUDGE

Dated:  November 17, 2006